UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KELVIN K. BARTHOLOMEW, A37-591-510,

Petitioner,

-v-                                                               13-CV-249-JTC

ERIC H. HOLDER, Attorney General
of the United States;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;

Department of Homeland Security; and

TODD L. TRYON, Facility Director, Buffalo
Federal Detention Facility,

Respondents.

_____

## INTRODUCTION

Petitioner Kelvin Bartholomew, an alien under a final order of removal from the

United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), pending the execution of a final immigration order of removal issued against him.

Item 1. As directed by this court's order entered April 17, 2013 (Item 5), respondent[1] has

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

submitted an answer and return (Item 7), along with an accompanying memorandum of law (Item 8), in opposition to the petition, and petitioner has submitted a reply (Item 9).  For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Trinidad and Tobago, was admitted to the United States at New York, New York, on or about February 27, 1982, as a lawful permanent resident.  *See* Item 7-2 (Exh. A attached to Declaration of DHS Deportation Officer Juanita Payan (Item 7-1)), pp. 5, 12.  DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

a.    On or about January 31, 2003, petitioner was convicted of Attempted Criminal Sale of a Controlled Substance in the 3rd Degree.

b.    On or about October 8, 2003, petitioner was convicted of Criminal Possession of a Controlled Substance in the 5th Degree: Cocaine 500 milligrams.  He was sentenced to 5 years probation for this offense.

c.    On or about August 2, 2004, petitioner was convicted of Reckless Driving.

d.    On or about February 14, 2006, petitioner was convicted of Criminal Possession of a Controlled Substance in the 7th Degree.  He was granted a 1 year conditional discharge for this offense.

e.    On or about January 16, 2007, petitioner was convicted of Criminal Contempt in the 2nd Degree.  He was sentenced to time served and a 1 year conditional discharge for this offense.

      f.      On or about May 7, 2009, petitioner was convicted of Obstructing Governmental Administration.  He was sentenced to 30 days incarceration to be served on weekends, and granted a 1 year conditional discharge for this offense.

      g.      On or about January 26, 2012, petitioner was convicted on a plea of guilty to a charge of Operating a Motor Vehicle with .08 of 1% Alcohol or More in Blood–1st offense.

*See* Item 7-1, ¶ 6.

DHS records further reflect that on February 24, 2003, petitioner was encountered by DHS officers at the Broome County Jail and was served with a Notice to Appear for Removal Proceedings ("NTA") under Section 240 of the Immigration and Nationality Act ("INA").  Item 7-2, pp.18-19.  The Notice to Appear charged petitioner with being subject to removal from the United States, pursuant to INA § 237(a)(2)(B)(i) (8 U.S.C. § 1227(a)(2)(B)(i)), as an alien who at any time after admission has been convicted of a controlled substance offense; and pursuant to INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(B) (8 U.S.C. § 1101(a)(43)(B)), an offense relating to the illicit trafficking in a controlled substance.  *Id.*  On November 14, 2003, an immigration judge ("IJ") granted petitioner's request for Cancellation of Removal pursuant to INA § 240A(a), terminating the immigration proceedings against him.  *See* Item 7-1, ¶ 8.

On May 30, 2009, petitioner was once again encountered by DHS officers at the Broome County Jail, and was taken into DHS custody.  He was served with a further NTA charging him with being removable from the United States pursuant to INA

§ 237(a)(2)(B)(i), as an alien, who at any time after admission, has been convicted of a controlled substance offense. *See* Item 7-1, ¶ 9.  These proceedings were administratively closed on September 21, 2009, when petitioner was transferred from the custody of DHS to the custody of the Broome County Sheriff's Office, pending the completion of state criminal proceedings on charges of Manslaughter, Vehicular Manslaughter, Assault, Driving While Intoxicated, Aggravated Unlicensed Operation of a Motor Vehicle and Reckless Driving. *Id.* at ¶¶ 10, 11.  These charges were ultimately resolved on January 26, 2012, upon entry of a plea of guilty to the charge of Operating a Motor Vehicle with blood/alcohol content more than .08 of 1%,[2] for which petitioner was sentenced to time served and immediately returned to DHS custody for recommencement of immigration proceedings. *Id.* at ¶ 12.

On April 12, 2012, IJ John B. Reid ordered petitioner removed from the United States to Trinidad and Tobago.  Item 7-2, p. 11.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on August 10, 2012, the BIA dismissed the appeal. *Id.* at 9-10.  Shortly thereafter, on August 15, 2012, DHS sent a presentation packet to the Consulate General of Trinidad and Tobago ("Consulate") in New York City, requesting that a travel document be issued for petitioner's removal. *Id.* at 20.

On August 20, 2012, petitioner filed a *pro se* petition in the United States Court of Appeals for the Second Circuit for review of the BIA's order of August 10, 2012, accompanied by a request for stay of removal.  *See id.* at 24-26 (Docket Sheet, *Bartholomew v. Holder*, 2d Cir. Docket No. 12-3274).  This court's check of the federal

---

[2]DHS records reflect that the plea was entered following a jury trial which resulted in the jury being unable to reach a unanimous verdict. *See* Item 7-1, ¶ 12.

courts' Public Access to Court Electronic Records ("PACER") service indicates that the petition for review was dismissed, and the request for stay of removal was denied as moot, by the circuit court's order dated June 24, 2013, granting petitioner's letter request to withdraw the petition for review.  Meanwhile, petitioner remains in DHS custody at the Buffalo Federal Detention Facility in Batavia, New York, pending execution of the final order of removal.

In accordance with immigration regulations, DHS reviewed petitioner's custody status in October 2012.  On or about October 30, 2012, petitioner was notified that, based upon the totality of information available in the case–particularly, his extensive criminal history demonstrating "wanton disregard for the laws of the United States," and the limited evidence of and family/community ties or employment opportunities, DHS determined to continue his detention because he posed a flight risk and a threat to the community if he were to be released from custody.  *Id.* at 5-7.

Further review of petitioner's custody status was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") in January 2013.  As part of that review, a panel was convened at the Buffalo Federal Detention Facility to conduct an in-person interview.  Following completion of the file review and interview, petitioner was notified on or about February 7, 2013, that DHS determined to continue his detention in DHS custody. *See id.* at 2.

Petitioner filed this action on March 7, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241.  Petitioner claims that his detention by DHS prior to the IJ's removal order is unlawful because he was taken into custody and detained without an individualized bond determination, and that his continued  post-final-removal-order detention is unlawful

since it has exceeded the "presumptively reasonable" six-month period established under

the due process standards set forth by the United States Supreme Court in *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001).   Upon full consideration of the matters set forth in the

submissions on file, and for the reasons that follow, the petition is denied.

### DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under

28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the

United States.' "   *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic

method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration

removal proceedings and pending removal following the entry of a final order of removal

are governed by two separate provisions of the INA–respectively, INA § 236, which

authorizes the arrest and detention of an alien on warrant pending a decision on whether

the alien is to be removed from the United States, and INA § 241, which authorizes

detention of aliens after the issuance of a final removal order.   INA § 236 provides, in

pertinent parts, as follows:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and
detained pending a decision on whether the alien is to be removed from the
United States.  Except as provided in subsection (c) of this section and
pending such decision, the Attorney General–

(1) may continue to detain the arrested alien; and
(2) may release the alien on–
    (A) bond of at least $1,500 with security approved by,
    and containing conditions prescribed by, the Attorney
    General; or
    (B) conditional parole ….

…

(c) Detention of criminal aliens.

(1)  Custody

The Attorney General shall take into custody any alien who …
is deportable by reason of having committed any offense
covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or( D) of
this title, … when the alien is released, without regard to
whether the alien is released on parole, supervised release, or
probation, and without regard to whether the alien may be
arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(a), (c).

In this case, petitioner challenges both his detention pending removal proceedings

pursuant to INA § 236, and his detention post-final removal order pursuant to INA § 241.

With regard to his challenge to pre-removal order detention, petitioner alleges that he was

detained without being provided an individualized bond hearing as authorized by INA

§ 236(a)(2).  However, as discussed above, petitioner was taken into DHS custody in

January 2012 immediately upon resolution of his state criminal charges, for

recommencement of his removal proceedings based on the pending May 2009 NTA

charging him with being removable under INA § 237(a)(2)(B)(i) (an alien who at any time

after admission has been convicted of a controlled substance offense; 8 U.S.C. §

1227(a)(2)(B)(i)).   This pre-removal order detention without an individualized bond

determination hearing was therefore authorized by INA § 236(c), which the Supreme Court

has held is constitutionally permissible.  *See Demore v. Kim*, 538 U.S. 510, 531 (2003)

(Detention of removable criminal aliens during the limited period of removal proceedings "is a constitutionally permissible part of that process"); *see also Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011).  Accordingly, petitioner's detention during the period prior to the pre-final order of removal did not violate due process.

With regard to petitioner's challenge to his continued detention in DHS custody post-final removal order, this detention is authorized pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[3]

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released,

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months  "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order

---

shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1).   The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when

released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on January 26, 2012, upon completion of his criminal proceedings in Broome County, for detention pending completion of immigration removal proceedings as authorized by INA § 236.  *See* Item 7-1, ¶ 12.  This detention continued until August 10, 2012, when the BIA dismissed petitioner's appeal from the IJ's order of removal.  *See* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly undertook efforts to secure a travel document for petitioner's removal to Trinidad and Tobago.  *See* Item 7-1, ¶ 15.  Then, on August 20, 2013, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal.  *Id.* at ¶ 16.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud*, 2011 WL 5326465, at *1 (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010)

-11-

(even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at \*2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Pursuant to this policy, the removal period which began on August 10, 2012, was "effectively stayed" between August 20, 2012, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit, and June 24, 2013, when the Second Circuit granted petitioner's letter request to withdraw the petition for review. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, as of the date of entry of the present order, DHS has had less than ninety days from the date the removal order became final to obtain the travel documents necessary for its execution, during which time petitioner's detention was mandatory. *See* INA § 241(a)(2).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights

-12-

under the due process clause of the Fifth Amendment.  *See Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate a finding that there is no significant likelihood of removal to Trinidad and Tobago in the reasonably foreseeable future.  He simply contends that the Consulate "has not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued."  Item 9, p.7.  As discussed above, however, prompt

steps were taken by DHS upon issuance of petitioner's final removal order to secure the travel document, and there is nothing in the record before the court to indicate that DHS will further delay those efforts, or that Trinidad and Tobago authorities would be inclined to deny the request, upon receiving notice that the petition for review has been withdrawn and the period of forbearance has expired.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Trinidad and Tobago, indicating that there are no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2008, a total of 478 aliens were repatriated to Trinidad and Tobago; in FY 2009, 489 aliens were repatriated to Trinidad and Tobago; and in FY 2010, 368 aliens were repatriated to Trinidad and Tobago.  *See* Item 7-1, ¶ 20 (citing DHS Yearbook of Immigration Statistics: 2010, Table 38: http://www.dhs.gov/files/statistics/publications/YrBk10En.shtm).  These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the government of Trinidad and Tobago can be accomplished within the reasonably foreseeable future following resolution of petitioner's federal court litigation, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 27-31.  However, several cases decided within this district have found the habeas petitioner's

assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and

that petitioner may not rely on the delay resulting from his request for circuit court review

of the final order of removal to claim that his prolonged detention violates substantive due

process.  Accordingly, petitioner has failed to demonstrate that he is "in custody in violation

of the Constitution or laws or treaties of the United States" for the purposes of granting

habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.  This

dismissal is without prejudice to file another petition should it subsequently appear that the

presumptively reasonable period of post-removal-order detention has elapsed, and that

removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL

4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered

stating that any appeal from this Judgment would not be taken in good faith and therefore

leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S.

438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to

close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: August 29, 2013
p:\pending\2013\13-249.aug28.2013

-16-